D. P. LACKEY v. ARTHUR PETERSON AND ANOTHER.[1]

December 26, 1924.

No. 24,253.

**Horses were not running at large.**

While crossing a public highway traversing a farm, horses going from an inclosure on one side of the road to the barnyard on the other side are not running at large, within the meaning of section 6063, G. S. 1913, although no one is in charge of them while upon the road.

From a judgment in justice court in favor of plaintiff, defendants appealed to the district court for Freeborn county where the appeal

[1]Reported in 201 N. W. 428.

was heard by Peterson, J., and a jury which returned a verdict in favor of defendants. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, plaintiff appealed. Affirmed.

*Meighen, Knudson & Sturtz,* for appellant.

*H. H. Dunn,* for respondents.

LEES, C.

This action was brought to recover treble damages for an injury to plaintiff's motor truck, caused when a horse owned by defendants ran against the truck. A trial by jury resulted in a verdict for defendants and plaintiff has appealed from an order denying a new trial.

Defendants occupy a farm located between Albert Lea and Alden and traversed by State Highway No. 13. At 8 o'clock in the evening of a winter day the driver of the motor truck was passing the farm buildings, which are situated on the north side of the highway with the exception of a small feed mill on the south side. On that day defendants' horses had been placed in an inclosure south of the road. In the evening the gate in the inclosure was left open. As the truck came along, the horses, with no one in charge of them, came through the gate and started to cross the road to go to the barnyard. One of them attempted to dash in front of the truck, which was moving slowly, and ran against the radiator and damaged it. Upon this state of facts plaintiff asserted a claim for damages, based upon section 6063, G. S. 1913, which declares that it shall be unlawful for the owner or person having control of cattle or horses to permit them to run at large.

At the close of the evidence each party asked for an instructed verdict. The court denied both requests and submitted the case to the jury, instructing the jury that the question to be determined was whether defendants permitted their horses to run at large within the meaning of the statute, and defining "running at large" as permitting an animal to wander, rove or ramble at will without restraint or confinement, a correct definition under Goener v. Woll, 26 Minn. 154, 2 N. W. 163.

Plaintiff's counsel contend that this was not a question for the jury because the evidence showed conclusively that the horses were running at large, and hence his motion for a directed verdict for some amount should have been granted.

In the days when there were few fences and inclosed pasture lands were unknown, livestock roamed about the country without restraint. Uncultivated land was much more abundant than land under tillage, and the early settlers found it easier to fence the fields than to fence in their cattle and horses. As farms were developed and settlers became more numerous, the policy of compelling the owners of domestic animals to keep them on their own land came into favor. The forerunner of the present statute is a clause in section 15, chapter 10, G. S. 1866, conferring authority on town electors at their annual meeting to determine the time and manner in which domestic animals are permitted to go at large. This was followed by legislation appearing in the G. S. 1878 as section 37, chapter 19, which gave the town electors power to determine by by-law that such animals might run at large, in which case there could be no recovery by the owner of unfenced land for damages committed by the animals in the daytime. Section 39 of the same chapter imposed a penalty upon the owners of certain animals of the male species who permitted them to run at large, but there were no other restrictions upon the owners' right to allow their live stock to go about at will, save as provided by numerous special laws tabulated at the end of section 2122, G. S. 1894.

State-wide prohibition of the running at large of domestic animals came with the enactment of chapter 459, p. 668, L. 1913, now sections 6063-6065, G. S. 1913, which declares that the herding of catttle, horses, etc., upon any land, over the protest and against the will of the owner, shall be deemed a running at large.

In view of the history of the statute, we are unable to agree with plaintiff's counsel that a farmer violates the law if he leaves open a gate in his pasture fence and his cattle or horses go through and cross a public highway on their way to his barnyard. In the instant case the horses were not trespassing while crossing the road, for they were on land the defendants had the right to use for any pur-

pose not incompatible with the enjoyment of the public easement. Pederson v. City of Rushford, 146 Minn. 133, 177 N. W. 943. Nor were they running at large in the sense that it should be so held as a matter of law.

It is suggested that a domestic animal on a public highway and under no restraint is a source of danger to motorists. Possibly there is need for more legislation but, as the statute now stands, the owner of a horse does not become a law-breaker when he permits the animal to cross a highway without directing or controlling its movements.

There was no error in the denial of plaintiff's request for a directed verdict or in the instructions to the jury.

Order affirmed.