Ray DeBuck, Appellee, v. Lester C. Gadde, Appellant.

Gen. No. 42,585.

610

Opinion filed June 16, 1943.

Hinshaw & Culbertson, of Chicago, for appellant; John M. Moelmann, of Chicago, of counsel.

Edward M. Platt, of Chicago, for appellee.

Mr. Justice Friend delivered the opinion of the court.

Plaintiff brought suit to recover damages for the death of a certain riding horse which was struck by an automobile operated by defendant on North avenue, approximately two blocks west of the Des Plaines river. At the close of plaintiff's case, and again at the close of all the evidence, defendant's motions for a directed verdict were overruled. The jury returned a verdict finding defendant guilty and assessing plaintiff's damages at $600. Thereafter defendant moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. Both motions were overruled, and judgment was entered for plaintiff in the sum of $600, from which defendant appeals.

The collision occurred July 24, 1941. There is a forest preserve on the north side of North avenue. On the south side of the highway nearest the river there is a small landscape gardener's office, then plaintiff's riding stables known as the River Forest Riding Academy, then the Old Homestead Tavern, then the

Archery Range, and then the Rosebud Stables owned by one Frank Fagiano. At the site of the accident North avenue consists of two roads or lanes, separated by a grass plot. Opposite the Old Homestead Tavern is a bridle path on the north side of North avenue, which runs about 30 feet north of the road, turns to the west, and runs past the Rosebud Stables, where it again turns to the north into the forest preserve. This cross path is used by customers of the Archery Range and the Old Homestead Tavern, as well as by equestrians, is covered with gravel, and is about 50 to 75 feet wide. There is a sign along North avenue reading "Bridle Path," about 200 feet from the cross path, the letters of which are plainly visible.

About 7 o'clock in the evening on the day in question, Glenn Devini, a veteran equestrian who had been riding at the River Forest Riding Academy for about three years, rented a black horse named Ace from plaintiff's riding academy, and with another rider entered the forest preserve. Within an hour defendant, who resided in Belvidere, Illinois, was driving in a westerly direction on North avenue between 50 and 60 miles an hour in the center of the double lane highway. Plaintiff's horse, riderless and with no person near him, walked upon and across the gravel path, was struck by defendant's automobile, and carried some 25 or 30 feet from the site of the collision. The car traveled about a block before it came to a stop. Defendant's automobile did not slow down before the impact, and the evidence discloses that he saw the "bridle-path" sign and knew the path was there. A traffic sign along North avenue near the place of the accident reads: "Speed Limit, 40 Miles Per Hour."

The horse was thrown to the pavement by the impact and had an open cut from seven to nine inches long. It was bleeding profusely, and its shoulder seemed to be "pushed in" or dislocated. Its rear legs were stiff, and in spite of every effort to bring it to

its feet, it was unable to stand. Dr. Miller, a veterinarian, arrived shortly and examined the horse. A conversation between plaintiff and the veterinarian ensued, following which plaintiff destroyed the horse with a gun. Dr. Miller died approximately two months before the trial. Plaintiff testified that he had spent eight to ten hours a week, over a period of one year, training the horse to jump; that it had won a first ribbon and cup in a horse show in jumping events; and that in his opinion it had a value of $750.

As ground for reversal it is first urged that plaintiff failed to prove that at the time of the occurrence and immediately prior thereto he was in the exercise of due care or caution for the safety of his horse, and the provision of section 1, chapter 8 of the Ill. Rev. Stat. 1941 [Jones Ill. Stats. Ann. 5.001], which reads as follows, is invoked in support of the contention: "Hereafter, it shall be unlawful for any animal of the species of horse, ass, mule, cattle, sheep, goat, swine or geese, to run at large in the State of Illinois." Defendant's counsel take the position that because plaintiff's horse was riderless and unattended, it was running at large, in violation of the statute, thus furnishing *prima facie* evidence of plaintiff's negligence. The immediate question presented in this connection is whether Ace was running at large within the purview of the statute when it was injured. What constitutes running at large, within the meaning of statutes of this kind, is discussed in 3 C. J. S., Animals, sec. 131, p. 1231, wherein the author points out that the meaning of the words "running at large" differs in various statutes, and should always be determined largely from the objects and purposes sought to be accomplished by the particular statute wherein the words are used. He classifies the statutes in two categories, and states that a statute of the first class implies knowledge, consent or willingness on the part of the owner that the animal be at large, or such negligent

conduct as is equivalent thereto, but does not embrace cases where, through some untoward circumstance, the owner is unable to watch and care for the animal in a particular instance, or where, notwithstanding the owner has taken precautions to restrain them and is without negligence, the animals escape from him and he makes immediate and suitable efforts to recover them. In our own State it was held, in the early case of *Town of Collinsville v. Scanland*, 58 Ill. 221, that an animal is not running at large where, as for instance, the owner, being called to the bedside of a dying brother, failed to prevent animals which he had watched and cared for daily, from straying. *Myers v. Lape*, 101 Ill. App. 182, and *Kinder v. Gillespie*, 63 Ill. 88, are illustrative of the interpretation of the statute invoked in this State, which is primarily aimed at situations where animals are turned out to graze. In *Fugett v. Murray*, 311 Ill. App. 323, one of several animals turned out in a field to graze, was found upon a highway, and this was held to constitute "running at large." On the other hand, in *Caspers v. Anglo-American Provision Co.*, 159 Ill. App. 573, where a horse, after being fed and an attempt was being made to bridle him, ran away and injured plaintiff's intestate upon a highway, the court held that this did not constitute "running at large."

Similar constructions have been placed on the statutes in other States. In *Russell v. Cone*, 46 Vt. 600, suit was brought to recover a penalty under such a statute. The evidence disclosed that the owner of the horse permitted it to return over highways unattended, and that the horse always found his way back. The court held that this did not constitute "running at large." In *Lackey v. Peterson*, 161 Minn. 315, 201 N. W. 428, a horse went through the open gate of the inclosure, started to cross the road to go to the barnyard and collided with plaintiff's truck. It was there likewise held that these facts did not constitute "running

at large." In *Gardner v. Black*, 217 N. C. 573, 9 S. E. (2d) 10, a mule coming out of a field ran upon a highway and into plaintiff's automobile. The court held that the mule was not running at large in violation of the statute.

In the case at bar the question of contributory negligence became one for the consideration of the jury under proper instructions. Plaintiff rented his horse to an experienced rider and did nothing whatsoever to contribute to or make possible the accident. Several decisions applicable to actions for injuries to stray animals upon highways sustain this rule. In *Texeira v. Sundquist*, 288 Mass. 93, 192 N. E. 611, defendant struck an unattended horse on a public highway. In the course of its opinion the court said that "A stray horse when upon a public highway without negligence on the part of its owner is not an outlaw nor, as against a traveler exercising a traveler's rights to use the highway, is such an animal a trespasser," and pointed out that "The defendant had the burden of proving that the horse was on the highway because of negligence of the plaintiff." There is nothing in the case at bar to indicate that plaintiff turned his horse loose upon the highway or that he knew the animal was there unattended. In *Turner v. Elrod,* 151 S. C. 131, 148 S. E. 701, plaintiff's mule was killed by a motorist when it strayed from home and was attempting to cross a highway. The trial court directed a verdict for the defendant. This was held to be error, the court pointing out that the rule governing the liability of the driver of an automobile for negligence in cases of that kind should be determined by the application of the rule of due care under the circumstances and became a question of fact for the jury. In *Pullam v. Moore,* 204 Mo. App. 697, 218 S. W. 938, plaintiff's colt, ranging on a highway, was struck by defendant's automobile. In affirming judgment for plaintiff, the court held that the case presented a question for the jury.

Even in cases where the evidence more strongly indicates that an animal was running at large, in violation of the statute, the courts have nevertheless held that the question of contributory negligence is still a matter to be determined by the jury, under proper instructions. In the case at bar the court gave five instructions on the question which were offered by defendant. In *Cairo & St. Louis R. Co. v. Woosley,* 85 Ill. 370, plaintiff sued the railroad company for negligently killing a cow and calf, and the railroad interposed the defense that the animals were running at large in violation of the statute. The court held that "the question whether the owner has been guilty of ,contributory negligence in permitting them to run at large, is one of fact, to be determined by the jury from the circumstances of the case, and that it is not sufficient to charge a plaintiff with contributory negligence, in a suit against a railroad company for injury to stock, to simply show that the owner permitted the stock to run at large in violation of law; . . . The burden of showing contributory negligence in such cases, where it does not appear otherwise, is upon the railroad company."

In *Myler v. Bentley,* 226 Mich. 384, 197 N. W. 521, a motorist who collided with a stray horse on a highway contended that the animal was running at large in violation of the statute, but the court held that whether or not the owner of the horse was guilty of negligence was a question of fact that was required to be submitted to the jury.

Defendant also argues that there is no proof as to his negligence, but in view of the evidence that he was driving over 50 miles an hour, knew the bridle path, and saw the horse before the accident, this question certainly became one for the determination of the jury.

Defendant complains because the trial court permitted plaintiff to introduce proof, over his objection, that the horse was shot, and argues that in an action

for negligence, damages can be recovered only for the proximate consequence of the negligence shown, and his counsel say that since there is no evidence tending to show that it was necessary to destroy the animal after the collision, the measure of damages is not the fair cash market value of the horse at the time of its death, but the difference between its fair cash market value at the time it was injured and its fair cash market value after the injury. From the facts heretofore set forth, it appears that the violent impact of an automobile traveling over 50 miles an hour, carried the horse some 25 or 30 feet, cut its chest severely, produced bleeding, dislocated its shoulder, and caused its hind legs to become so stiff that it was unable to stand. From these circumstances the jury was warranted in inferring that the horse was rendered useless, and for humane considerations had to be destroyed. It was a total loss to plaintiff, and therefore the measure of damages was the value of the horse when it was struck. All the facts were submitted to the jury for consideration, and we think no error was committed in that behalf.

Criticism is made of instruction No. 1, which reads: "The court instructs the jury that a person who rents or leases a horse from the owner of the horse and retains possession thereof is known as a bailee. You are further instructed that even if you believe that the rider of the horse was a bailee of the horse in question and was guilty of negligence, while he had control and custody of the horse after he rented it from the owner, if he rented it from the owner and at the time of the accident in question, which contributed to the collision in question, still if you further believe from the evidence that the plaintiff, the owner of the horse, was not, by his own conduct, in any way the cause of such negligence, if any, upon the part of the bailee of the horse, then such negligence, if any, on

the part of the said bailee, cannot be charged against or imputed to the owner of the horse in this case.'' Counsel say that the instruction is not based upon the evidence, and that it assumes facts which were not in evidence or which were disputed. Counsel further say that there is no evidence in the record to support the statement that the horse was rented to a person who retained possession thereof until the accident and is designated in the instruction as a bailee. Margaret Stenner, a disinterested witness, testified that the rider rented the horse and went out on the path with it, with another rider, and there is evidence that a charge of one dollar per hour was made for the rental of the horse. In view of this testimony there can be no question that a bailment was created, and the person to whom the horse was rented remained in possession thereof until the accident. 31 C. J. S., Evidence, sec. 124, b. (2), p. 741. A like instruction was approved in *Chicago City Ry. Co. v. Nonn*, 133 Ill. App. 365. We think the instruction is founded on evidence produced upon the hearing, and correctly states that the negligence of the bailee cannot be imputed to the bailor, which was one of the issues involved.

Criticism is also made of instruction No. 4, which charged the jury that ''if you find the issues in favor of the plaintiff, then the measure of his damages will be the fair, cash, reasonable market value of the horse at the time and place it was killed or injured.'' Counsel again argue that the measure of damages is the difference between the fair cash market value of the personal property before and after the damage occurs, but as already indicated, the horse was so badly injured that it had to be shot and therefore had no market value after it was dead.

The remaining contention is that the verdict of the jury is excessive. Plaintiff testified to the value of the horse and was an expert on that subject. He had

owned and dealt in horses for seven years, attended auction sales where as many as 200 or 300 horses were sold at one time, ranging in price from $125 to $2,500. During those seven years he had personally bought 150 horses and had purchased and sold horses to private individuals. This horse had won prizes as a jumper and was rented out only to persons personally known to plaintiff, who gave it as his opinion that the horse was worth $750. Upon this evidence the jury was warranted in returning a verdict for $600. We think that amount was not excessive.

The verdict was founded upon the evidence adduced, the case was fairly tried, and the judgment should therefore be affirmed. It is so ordered.

*Judgment affirmed.*

SULLIVAN, P. J., and SCANLAN, J., concur.