(text box: 1)
 NO. 5-03-0041

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

LLOYD GALLOWAY, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellant and Cross-Appellee, )  Jasper County.  

)

v. )  No. 01-L-2

)   

RAYMOND KUHL, Individually, KUHL FARMS, a )

Partnership, and its Partners, RAYMOND KUHL, )

MIKE KUHL, FRED KUHL, JOHN KUHL, and )

HENRY KUHL, )  Honorable

)  Steven P. Seymour,

     Defendants-Appellees and Cross-Appellants. )  Judge, presiding.

________________________________________________________________________

JUSTICE HOPKINS delivered the opinion of the court:

After a trial involving the Illinois Domestic Animals Running at Large Act (510 ILCS 55/1 
et seq.
 (West 2000)), the jury returned a verdict in favor of the plaintiff, Lloyd Galloway, and against the defendants, Raymond Kuhl, Kuhl Farms, Mike Kuhl, Fred Kuhl, John Kuhl, and Henry Kuhl, and reduced the plaintiff's damages by 50% for the plaintiff's comparative negligence.  Although the jury awarded the plaintiff damages for disfigurement and pain and suffering, it failed to award damages for the plaintiff's medical expenses.  After the parties filed posttrial motions, the trial court determined that the jury's award was irreconcilably inconsistent, and upon the defendants' request, the trial court entered an 
additur
 for the plaintiff's claimed medical expenses, reduced by half for the plaintiff's comparative negligence. 

On appeal, the plaintiff asserts that the trial court improperly allowed the jury to consider the plaintiff's comparative negligence.  On cross-appeal, the defendants assert that the trial court improperly determined that the jury's verdict was inconsistent.

We affirm.

FACTS

On February 6, 2001, the plaintiff filed his complaint against the defendants, alleging that the defendants' cattle had strayed onto the highway, in violation of the Illinois Domestic Animals Running at Large Act (510 ILCS 55/1 
et seq.
 (West 2000)), and collided with the plaintiff's vehicle, causing him injury.  On May 18, 2001, the defendants filed their answer, asserting, as an affirmative defense, that the plaintiff had negligently operated his vehicle.  On June 7, 2001, the plaintiff filed a motion to strike the defendants' affirmative defenses, which the trial court denied.  Over the plaintiff's objections at the trial, the trial court instructed the jury concerning the plaintiff's comparative negligence.   

At the trial, the plaintiff testified to the following:

"Q.  And I ask you if this is a correct summary of all of your medical bills?

* * * 

A.  Like I [said] before, I never saw any of my medical bills.

Q.  They are all paid for?

A.  By Cox [B]rothers.

* * *

Q.  Is this the full amount [$18,501.49] that you verify as accurate as to what your      medical bills are?

A.  As far as I know, yes."

The jury returned a verdict for the plaintiff and allocated to the plaintiff $4,400 for disfigurement, $20,000 for pain and suffering, and $5,600 for the value of salaries lost.  The jury awarded the plaintiff $0 for the reasonable expenses of necessary medical treatment and services received.  The jury found the plaintiff 50% negligent and assessed the plaintiff's recoverable damage as $15,000.

On September 25, 2002, the plaintiff filed his posttrial motion, asserting that the jury had improperly considered the plaintiff's comparative fault and that the jury's verdict was inconsistent because the jury had failed to award the reasonable expenses of necessary medical care.  On October 8, 2002, the defendants filed their response to the plaintiff's posttrial motion and, alternatively, a motion for an 
additur
.  With relation to their alternative motion for an 
additur
, the defendants requested that the trial court enter an 
additur
, in the amount of $9,250.75, to correct the jury's alleged mistake of failing to award the plaintiff medical expenses.

At the posttrial hearing, on December 20, 2002, the trial court held that the jury's verdict was inconsistent, and it entered an 
additur
 increasing the jury's award by $9,250.75, which was 50% of the total medical expenses in evidence.

On January 16, 2003, the plaintiff filed his notice of appeal, and on January 22, 2003, the defendants filed their notice of cross-appeal.

ANALYSIS

Comparative Negligence and the Illinois Domestic Animals Running at Large Act

The plaintiff asserts that because his cause of action involved the Illinois Domestic Animals Running at Large Act (510 ILCS 55/1 
et seq.
 (West 2000)), the trial court improperly allowed the jury to consider the plaintiff's comparative negligence.  Whether comparative negligence principles apply to the Illinois Domestic Animals Running at Large Act is a question of law that we review 
de novo
.  See 
Lepkowski v. Laukemper
, 317 Ill. App. 304 (1943).  

The Illinois Domestic Animals Running at Large Act provides:

"No person or owner of livestock shall allow livestock to run at large in the State of Illinois.  All owners of livestock shall provide the necessary restraints to prevent such livestock from so running at large and shall be liable in civil action for all damages occasioned by such animals running at large; Provided, that no owner or keeper of such animals shall be liable for damages in any civil suit for injury to the person or property of another caused by the running at large thereof, without the knowledge of such owner or keeper, when such owner or keeper can establish that he used reasonable care in restraining such animals from so running at large."  510 ILCS 55/1 (West 2002).

The Illinois Domestic Animals Running at Large Act provides the livestock owner an opportunity to avoid strict liability if he can prove that he had no knowledge his animal was running at large and that he used reasonable care in restraining such animal.  
Corona v. Malm
, 315 Ill. App. 3d 692, 697 (2000); 
Christenson v. Rincker
, 288 Ill. App. 3d 185, 191 (1997) (this interpretation of the statute "clearly reflects the intent of the General Assembly in amending what would otherwise be a strict liability statute").  

Illinois courts have applied the doctrine of contributory negligence in cases involving the Illinois Domestic Animals Running at Large Act.  See 
Guffey v. Gale
, 332 Ill. App. 207 (1947) (the court reversed a judgment for the plaintiff, whose truck turned over after attempting to avoid the defendant's pig that was running at large on the highway, because the question of contributory negligence was not fairly left to the determination of the jury); 
De Buck v. Gadde
, 319 Ill. App. 609 (1943) (the plaintiff's violation of the Domestic Animals Running at Large Act and the defendant's negligent driving were matters to be determined by the jury); 
Fugett v. Murray
, 311 Ill. App. 323 (1941) (the court considered the contributory negligence of the passenger of the vehicle, which collided with a horse, whose owner was in violation of the Domestic Animals Running at Large Act); 
Weide v. Thiel
, 9 Ill. App. 223 (1881) (because it was the plaintiff's fault that the defendant's bull had escaped the pasture, she materially contributed to her own injury and cannot recover); 
Ewing v. Chicago & Alton R.R. Co.
, 72 Ill. 25 (1874) (although a violation of the statute preventing animals from running at large is evidence of negligence, the negligence of the plaintiff must be compared with the negligence of the defendant to determine its effect in preventing recovery).

In 
Beiter v. Erb
, 259 F.2d 911, 912 (7th Cir. 1958), the Seventh Circuit Court of Appeals rejected the plaintiff's contention that contributory negligence was not a defense to an action for negligence based upon the Domestic Animals Running at Large Act (Ill. Rev. Stat. 1957, ch. 8, par. 1 
et seq.
).  The court in 
Beiter
 held that despite the defendants' violation of the statute, the plaintiff must prove that he was exercising due care and caution for his own safety, 
i.e.
, that he was free from contributory negligence.  
Beiter
, 259 F.2d at 913.  In particular, the court in 
Beiter
 noted:  

"[I]n an extended argument [the plaintiff] cites and discusses many cases in an attempt to demonstrate that mere contributory negligence is not a defense to an action for negligence based upon a statutory violation.  We need not cite or discuss such cases because we are convinced there is no case in Illinois which sustains plaintiff's contention.  ***

More important is the fact that the [a]ppellate [c]ourts of Illinois in not fewer than five cases have either held or recognized that contributory negligence is a defense to an action for negligence predicated upon the statute relied upon on the instant case."  
Beiter
, 259 F.2d at 912-13.

In holding that contributory negligence was not a defense to claims brought under  other safety statutes, the Illinois Supreme Court held that the legislature's use of the wilfulness standard of liability indicated an intention to foreclose the use of contributory negligence, fixing a broad and distinct exception from the general rule of contributory negligence.  
Simmons v. Union Electric Co.
, 104 Ill. 2d 444, 458 (1984); 
Vegich v. McDougal Hartmann Co.
, 84 Ill. 2d 461 (1981) (when the safety statute's purpose of prevention is frustrated by a wilful violation and an accident follows, the full burden of the loss must be laid on the wrongdoer, even if the victim was himself negligent); 
Rost v. F.H. Noble & Co.
, 316 Ill. 357 (1925) (contributory negligence does not apply to injuries wilfully or intentionally inflicted); 
Schultz v. Henry Ericsson Co.
, 264 Ill. 156 (1914) (the reason for casting aside contributory negligence applies equally to all safety statutes that limit violations of the statute to wilful acts).  Unlike these safety statutes, the Illinois Domestic Animals Running at Large Act is not a safety statute that enumerates wilfulness as the standard of liability, and it is therefore distinguishable.

In 1981, the Illinois Supreme Court abolished the common law doctrine of contributory negligence, which barred the plaintiff from recovering for his injuries if his negligence contributed to the accident, and adopted in its place the doctrine of comparative negligence, which reduces the plaintiff's damages by the percentage of fault attributable to him.  
Alvis v. Ribar
, 85 Ill. 2d 1, 28 (1981) (the comparative negligence formula was modified by the enactment of section 2-1116 of the Code of Civil Procedure (Ill. Rev. Stat., 1986 Supp., ch. 110, par. 2-1116).  We hold that the doctrine of comparative negligence, like its predecessor, the doctrine of contributory negligence, may be applied in cases involving the Illinois Domestic Animals Running at Large Act to reduce or bar the plaintiff's recovery.  See 
Coney v. J.L.G. Industries, Inc.
, 97 Ill. 2d 104, 119 (1983) (even in cases involving strict liability, the comparative fault principle will operate to reduce the plaintiff's recovery by that percentage for which the trier of fact finds him at fault).

The trial court properly allowed the defendants' affirmative defenses and properly instructed the jury regarding the plaintiff's comparative negligence.

Inconsistent Jury Verdict

On cross-appeal, the defendants assert that the trial court incorrectly held that the jury's verdict was inconsistent.  Illinois courts express great reluctance to interfere with a jury's determination of the monetary amount that adequately compensates a plaintiff for his personal injuries.  
Butkewicz v. Chicago Transit Authority
, 252 Ill. App. 3d 914, 918 (1993).  However, where a verdict is legally inconsistent, it should be set aside.  
Wottowa Insurance Agency, Inc. v. Bock
, 104 Ill. 2d 311, 316 (1984).  The 
additur
 is appropriate in cases where the inadequacy of the verdict is due to the omission of a specific, definitely calculable item.  
Ross v. Cortes
, 95 Ill. App. 3d 772, 777 (1981); 
Rice v. McDonald's Corp.
, 268 Ill. App. 3d 201, 206 (1994) (the trial court properly used an 
additur
 to compensate the personal injury plaintiff for medical expenses when the jury left the space blank on the itemized verdict form and there was no dispute about the plaintiff's medical expenses or their relation to the injury).

At the trial, the plaintiff testified that Cox Brothers, under workers' compensation, paid his medical bills.  The jury returned a verdict for the plaintiff and allocated to the plaintiff $30,000 for disfigurement, pain and suffering, and the value of salaries lost; yet, the jury awarded the plaintiff $0 for the reasonable expenses of necessary medical treatment and services received.  If the jury relied on the fact that the plaintiff's medical expenses were paid by insurance, it improperly denied the plaintiff medical expense damages.  See 
Ross
, 95 Ill. App. 3d at 774 (whether the bill was paid by insurance is immaterial because the plaintiff could properly recover the entire amount of damages under the collateral source rule).  

The jury's verdict demonstrates that it believed that the plaintiff had compensable pain and suffering, in addition to disfigurement, and its failure to award medical expenses was wholly unwarranted and contrary to the manifest weight of the evidence.  The jury's verdict disregarded the evidence that the plaintiff had incurred medical expenses in the amount of $18,501.49.  The trial court properly found that the jury's verdict, awarding damages for pain and suffering and for disfigurement resulting from the injury but failing to award the plaintiff the reasonable expenses of necessary medical treatment and services received, was legally inconsistent.   

Upon the defendants' motion, the trial court properly cured the jury's error by granting an 
additur
 in the amount of $9,250.75, which represented the plaintiff's $18,501.49 medical expenses reduced by 50% for the plaintiff's comparative negligence.

We affirm the trial court's decision to allow the jury to consider the plaintiff's comparative negligence, its decision finding the jury's verdict legally inconsistent, and its decision, per the defendants' stipulation, to grant an 
additur
 in the amount of $9,250.75.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Jasper County is affirmed.  

Affirmed. 

WELCH and MAAG, JJ., concur.

                                      

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 03/02/04.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.