THE MISSOURI PACIFIC RAILWAY COMPANY V. ORLO E. OLDEN.

No. 13,867.　(83 Pac. 25.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Injury to Stock—Effect of Fence Law.* The fence law of 1868 (Gen. Stat. 1901, § 3071 *et seq.*) modified the common-law rule of liability for damages done by trespassing animals, and relieved the owner thereof from all liability for damages resulting therefrom, except trespasses committed on lands enclosed with the legal fence described in the act.

2. ——— *Herd Law—Common Law.* The herd law of 1872 (Gen. Stat. 1901, § 7466 *et seq.*), where adopted, is a readoption of the common law in this respect as it existed prior to the enactment of the fence law of 1868.

3. ——— *Fence Law Inoperative Where Herd Law Exists.* The fence law of 1868, which defines the kind of fence with which land must be enclosed before the owner can recover damages committed by trespassing stock, has no application for any purpose in counties where the herd law of 1872 has been adopted.

Error from Jackson district court; MARSHALL GEPHART, judge. Opinion filed November 11, 1905. Affirmed.

*Waggener, Doster & Orr,* for plaintiff in error.

*Hayden & Hayden,* and *John D. Myers,* for defendant in error.

The opinion of the court was delivered by

GREENE, J.: This was an action to recover the value of three mules and one colt, alleged to have been killed by the negligence of the Missouri Pacific Railway Company while operating its train on the Central Branch railroad. The defendant answered by a general denial, and also alleged contributory negligence on the part of the plaintiff in permitting his animals to run at large in violation of the herd law of 1872 (Gen. Stat. 1901, § 7466 *et seq.*), which was in force in the county when the stock were killed. To this answer the plaintiff filed a general denial. The trial resulted in a verdict and judgment for plaintiff, to reverse which the defendant prosecutes error to this court.

When the plaintiff had submitted his evidence to the jury the defendant demurred, making the following points: (1) That the testimony did not fairly or reasonably tend to show that the Missouri Pacific Railway Company was operating the Central Branch line when the stock were killed; (2) that the testimony of the plaintiff established the fact that the enclosure from which the stock escaped was not fenced with a legal fence—such a fence as is provided for in sections 3071-3075 of the General Statutes of 1901, and, therefore, the plaintiff was guilty of contributory negligence. Without setting out in full the testimony which leads us to the conclusion, we feel quite well satisfied that there was sufficient evidence to justify the court in overruling the demurrer on the first ground.

The stock were being pastured in a stalk-field, and escaped therefrom without plaintiff's fault, unless he was negligent in not maintaining the legal fence contended for by defendant, wandered along the highway and passed over an insufficient cattle-guard and upon the track of the Central Branch railroad, where they were killed by a passing train. The field in which the stock were being pastured was enclosed with posts upon which were nailed three wires in some places,

and only two in other places. This did not constitute such a fence as is denominated a legal one by sections 3071-3075 of the General Statutes of 1901.

Plaintiff in error contends that, in a herd-law county, if stock escape from an enclosure without the owner's fault he cannot recover damages against a railway company for killing them, unless such enclosure was protected by a legal fence. With this we do not agree. In 1868 the general fence law was passed (Gen. Stat. 1901, § 3071 *et seq.*). The effect of this law was to modify the common law so that the owner was not liable for injury committed by his trespassing stock, except to those whose lands were enclosed with a legal fence. The act defined a legal fence, and also provided means whereby it could be determined whether a fence complied with the requirements of the statute. This law is in operation in every county in the state except in those that have availed themselves of the herd law of 1872. The adoption of the herd law is a readoption of the common law in this respect, and the owner of cattle is liable for injuries committed by them in a herd-law county, regardless of the fence law. It was not intended that the fence law should, and it does not, furnish a rule by which to determine whether the owner of stock in herd-law counties is guilty of negligence in enclosing them. The adoption of such a rule would be equally dangerous to the railway company and the owner of the stock. Under such a rule the owner of breachy and unruly stock might enclose them in the weakest fence provided for in the statute, and if they broke this enclosure and escaped and went upon a railroad-track and were killed he could recover because he had a legal fence, notwithstanding he might know the enclosure was not sufficient to restrain them. In a herd-law county one cannot recover against a railway company for damages to stock if he permits them to run at large or if he places them in a pasture enclosed with a legal fence which he knows or has reason to believe will not re-

strain them and they escape therefrom. The care and diligence that every man is required to exercise in the protection of himself or property is ordinary care in view of all the surrounding circumstances. If the stock killed be the ordinary farm stock, and the owner have the pasture enclosed with an ordinary fence, such as is generally required to restrain that kind of stock, and they escape without his fault, he is not guilty of negligence and is not guilty of permitting the stock to run at large, and he may recover regardless of the fence law. This is the rule adopted in this state. (*Mo. Pac. Rly. Co. v. Johnston,* 35 Kan. 58, 10 Pac. 103; *Osborne v. Kimball,* 41 Kan. 187, 21 Pac. 163; *A. T. & S. F. Rld. Co. v. Riggs,* 31 Kan. 622, 3 Pac. 305; *K. P. Rly. Co. v. Wiggins,* 24 Kan. 588.)

The mules were killed February 28, 1902, and the trial was had in September, 1903. At the trial the plaintiff introduced a witness named Ray, who testified that in September, 1903, he had made shipments from Effingham, on the Central Branch line, and had received bills of lading therefor purporting to be issued by the Missouri Pacific Railway Company, one of which he produced, and it was offered and introduced in evidence over the objection of the defendant. It is insisted that this was error. The contention is made that presumptions do not operate retrospectively, and that the fact that the defendant was operating this line of road in September, 1903, was not a circumstance which could be considered by the jury as tending to show that it operated the line eighteen months previous, or in February, 1902. The admission of this bill of lading was not prejudicial to the defendant in view of the testimony of Mr. Waggener, one of the defendant's attorneys. He testified as follows:

"Ques. Do you know how freight bills or bills of lading were made out for freight shipped over what you call the Central Branch company? Ans. Yes, sir; I know how some are made out.

"Q. Is it not a fact they were made out on the blanks

8—72 KAN.

of the Missouri Pacific Railway Company? A. That is my judgment.

"Q. You understand then, in the matter of receiving and shipping freight, the business was done in the name—so far as the public knew anything about it—in the name of the Missouri Pacific Railway Company? A. In 1899 or 1900 the Missouri Pacific Railway Company had a lease of the Union Pacific Railroad Company. The Central Branch portion of it was foreclosed, and the Central Branch Railway Company organized and purchased this property; since that time these blanks, that have been in the offices of the Central Branch while the Missouri Pacific operated it, were used.

"Q. Those were the blanks of the Missouri Pacific Railway Company? A. Yes, had that name on it.

"Q. So that all contracts were made on Missouri Pacific blanks? A. As I understand, all contracts of shipment that have been made, those I have seen, since they got a lease on it; during all that time.

"Q. Since 1898? A. I think so.

"Q. And during the year 1902 contracts for the shipment of freight over this line of railroad which you have spoken of as the Central Branch were made in the name of the Missouri Pacific Railway Company? A. I could not say all were. I have seen contracts of shipment over the line of the Central Branch company that were made on the Missouri Pacific Railway Company's blanks.

"Q. Have you ever seen any other contracts of shipments for freight shipped over that road since 1898 that were not Missouri Pacific blanks? A. No, sir, I have not.

"Q. Tickets that were sold over that line of road were in the name of the Missouri Pacific Railway Company? A. I could not tell you about that; I don't know that I ever saw one, but my judgment is they are.

"Q. And they were in the year 1902? A. I presume they were; there may be Central Branch tickets. I don't know anything about that. I never bought one over the road, and I could not tell you."

That the freight bills used on the Central Branch railroad were Missouri Pacific blanks was not controverted. Therefore no prejudice resulted to the defendant in the admission of the blank produced by Ray.

Railway Co. v. Olden.

The only remaining question that requires our attention is the alleged error committed by the court in refusing to give the thirty-second and thirty-fifth instructions requested by the defendant. These instructions enumerated a number of facts appearing in the testimony, and the court was asked to instruct the jury that those enumerated would not be sufficient to justify the jury in finding that the defendant was operating the line of railroad at the time the mules were killed. The facts thus enumerated were all circumstances which, considered with the other testimony, tended to prove that the defendant was operating the Central Branch line when the stock were killed. It would be a dangerous, if not unauthorized, practice for the trial judge to carve out of a general mass of testimony tending to prove an ultimate fact certain portions of such testimony and instruct the jury that the existence of the facts thus testified to would not authorize them in finding the ultimate fact. Where testimony has been introduced generally, without objection, tending to prove the existence of a certain fact, and no part of it is withdrawn by instructions, the jury should consider the whole of the testimony in arriving at a conclusion. Evidence offered in a case is offered in its entirety, and should be so considered by the jury. The court cannot bisect the evidence and instruct the jury that one part is not sufficient for the purpose of establishing the cause or defense. For this reason no error was committed by the court in refusing to give the instructions referred to.

Complaint is made of some of the other rulings of the court but they are not of sufficient importance to require discussion. The judgment of the court below is affirmed.

All the Justices concurring.