No. 37,805

John H. Wilson, *Appellee*, v. Elbert S. Rule, *Appellant*.

(219 P. 2d 690)

Opinion filed June 10, 1950.

*John F. Eberhardt,* of Wichita, argued the cause, and *George Siefkin, George B. Powers, Samuel E. Bartlett, Carl T. Smith, Stuart R. Carter, Thomas E. Woods* and *Robert C. Foulston, Jr.,* all of Wichita, were with him on the briefs for the appellant.

*Wayne Coulson,* of Wichita, argued the cause, and *Howard T. Fleeson, Homer V. Gooing, Paul R. Kitch, Dale M. Stucky* and *Donald R. Newkirk,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Smith, J.: This is an action for damages alleged to have been sustained when a car being driven by plaintiff collided upon the highway with a mule owned by defendant. Judgment was for plaintiff. Defendant has appealed.

The petition alleged that about 9:30 p. m. plaintiff was driving his automobile north on a state highway; that two mules suddenly emerged, trotting upon the highway, directly in his path and the automobile collided with one of them; that defendant owned them and the proximate cause of the collision was defendant's negligent failure to keep them confined, as required by G. S. 1935, 47-301 *et seq*; he alleged damages to his automobile and prayed for judgment in that amount.

Before the trial started, counsel for plaintiff stated he based his right to recover upon G. S. 1935, 47-122 and 47-124 rather than G. S. 1935, 47-301 *et seq.*

Plaintiff testified he was driving on the highway and his lights were in good condition; that he saw the mules come from the left about seventy-five feet ahead of him; that he slammed on his brakes because they came on the highway so suddenly; that he hit the rear end of the first mule and damaged his car; that defendant said he owned the mules and had owned them only about three weeks and apparently they had opened the gate and were going back to their former home. He then introduced evidence as to damages to the car, about which there was no dispute, and rested. The defendant demurred to the evidence. The demurrer was overruled.

There was evidence in behalf of defendant with which we are not concerned here.

The specifications of error as far as we are now concerned are that the trial court erred in overruling defendant's objection to the introduction of evidence, his demurrer to plaintiff's evidence, his motion for a directed verdict and for judgment notwithstanding the verdict.

The plaintiff's theory will be stated first: He argues G. S. 1935, 47-122 and 47-123 by their precise terms are applicable to persons in plaintiff's situation and no search for the legislature's reasons for enacting the statute is necessary or permissible; that even in the absence of a statute, under the common law, proof that animals are unattended upon a highway is sufficient evidence to make a prima facie case of negligence upon the part of their custodian; proof that defendant's mules were at large in violation of a statute placed upon defendant the burden of proving his violation of the statute was not due to lack of care upon his part.

The arguments send us to a consideration of the development of the law having to do with loose stock. In England the liability of the owner of stock was confined to damages caused by the stock when it had invaded the land of another. Such was not well adapted to the early day conditions of this country, especially those states comprising the great plains area, where open range for stock was to become a common feature of our rural life. This feature of our law is the story of the attempts of the legislatures and courts to adjust the rights of the farmers who tilled the soil and planted crops on the one hand, and those who emphasized stock raising on the other.

The common law was remedied by the adoption in the states of so-called "fence" laws, whereby landowners were required to fence out their neighbors' wandering livestock in order to protect their crops. In Kansas the subject was treated in chapter 40 of the Laws of 1868, now appearing as G. S. 1935, 29-101 to 29-104. This statute it will be noted is carried in the statute books under the subject of fences. By its enactment the common law was so far modified that no action would lie for injuries done on real estate by trespassing cattle unless the real estate was enclosed with a sufficient fence, as prescribed by the statute. (See *U. P. R. W. Co. v. Rollins,* 5 Kan. 167; also, *Darling v. Rodgers,* 7 Kan. 592.)

By the time the next legislature met those who placed their emphasis on growing crops, as distinguished from running stock on the open range, began to make their influence felt. The legislature in 1870 enacted chapter 115. It provided in the first section that it should relate only to six counties named and that it should be in effect for only five years. Section 2 provided that the owner of stock who allowed it to trespass on the land of another should be liable in damages to the person so injured. There were other provisions not now important. In Saline county Rodgers sued Darling because Darling's stock came on Rodgers' wheat field and did damage. Darling answered not denying the damage but alleging that there was no fence around Rodgers' wheat field. The trial court sustained a demurrer to this answer and gave plaintiff judgment for $25. If chapter 115 had been good, the demurrer was rightfully sustained because Darling, the owner of the stock, was liable. We held chapter 115 bad because it did not have a uniform operation throughout the state. (See *Darling v. Rodgers,* supra.) The opinion is important, mainly for historical purposes.

There was in 1868 also an effort to limit somewhat the effect of chapter 40. That was by the enactment of article 1 of chapter 105 of that session. It provided that upon the presentation to the board of county commissioners of a petition signed by a majority of the electors of a township, the county board should make an order that all owners of domestic animals should keep them confined in the nighttime for certain portions of the year. There was also a section making the owners of stock liable for any damages from the depredations of such stock. This act was held valid. (See *Noffzigger v. McAllister,* 12 Kan. 315.)

The legislature of 1872 enacted chapter 193 of that session. It is

spoken of generally as the "herd law." It gave the county commissioners power to direct what animals should not be allowed to run at large within the county. After providing for the recordation of the order, the statute provided that persons injured in property by the running at large of any of the animals named in the order should have a lien upon the animals for the damages committed upon the property of such person. The next section provided for the taking into custody of animals about to commit a trespass upon premises owned by the person taking them up, and in another section that any landowner in such a county, who should enclose his land by a good and lawful fence, should have the same rights and powers conferred upon owners of real estate in counties not having the herd law. This chapter is carried in our present statute book as G. S. 1935, 47-301, 302, 303, 304 and 305.

The legislature of 1874 again dealt with the subject by the enactment of chapter 128 of that session. The first section provided that when two-thirds of the legal voters of any county should petition the county commissioners to make an order that all neat cattle, horses, mules, asses, swine and sheep shall be prohibited from running at large, the order should be made. Section 2 provided any person who should permit any of those animals to run at large shall be deemed guilty of a misdemeanor and upon conviction should be fined. The third section provided that the owners of any of these animals permitted or allowed to run at large should be liable to any person who should suffer damage from the depredations or trespasses of these animals. The section further provided for a lien. This chapter is carried in our statute books as G. S. 1935, 47-309, 310, 311 and 312.

The legislature of 1879 further supplemented the herd law by the enactment of chapter 175 of the laws of that session. By the first section of this chapter the county commissioners were given the power to rescind or modify the herd law by providing what animals should not be permitted to run at large. The third section provided for the county commissioners calling an election on receipt of proper petitions and submitting to the people of the county the question of the suspension of the herd law. This chapter is carried in our present statute as G. S. 1935, 47-306, 307 and 308.

It will be noted that from 1868 to 1879 the question of livestock and liability of the owner on account of its being at large was a live legislative question. It received the attention of practically

every legislature. Chapter 128 of the Laws of 1874 was the most comprehensive enactment. There can be but little doubt the damages for which owners of livestock at large upon the highways were liable in the early days were those caused by the stock while trespassing on real estate. It should be remembered that these laws were all enacted before the days of hard surface roads, automobiles, buses and trucks. The hazards of travel upon the roads were not nearly so great then nor was there so much traffic.

There is one statute of comparatively recent enactment. It is chapter 235 of the Laws of 1917. It provides that when not less than fifty-five percent of the legal voters of a county in which horses, mules and cattle are permitted to run at large shall petition the county commissioners to make an order not to permit them to run at large, the county commissioners should make such an order. This chapter is carried on our statute books as G. S. 1935, 47-313.

Such was the legislative situation when chapter 211 of the Laws of 1929 was enacted. The first section made it unlawful for any neat cattle, horses, mules, asses, swine or sheep to run at large. The second section provided that any person whose animals should run at large in violation of the provisions of section 1 should be liable to the person so injured for all damages resulting therefrom, and the person so damaged should have a lien on the animals for the amount of the damages. The third section provided for taking the trespassing animals into custody. As originally enacted, this section provided it should not apply to counties where there had been established a forest reserve. Chapter 221 of the Laws of 1931 took this provision out of the act. These chapters are carried on our present statute books as G. S. 1935, 47-122, 123 and 124. These last sections are the ones upon which plaintiff bases his action.

Defendant first argues the statute was not intended to give a right to sue the owner of livestock for any damages except those committed while the stock was trespassing on land. In other words, the statute was not enacted for the benefit of automobile drivers on the highway.

The conclusion we have reached as to the disposition we should make of this appeal makes it unnecessary to consider some of the questions argued.

The statute upon which plaintiff depends uses the phrase "run at large" in both sections. The mule in this case was unattended upon the highway. There is no evidence whatever on the part of plain-

tiff as to how he happened to be there. The question is—Is a mule that is simply unattended upon the highway running at large, within the meaning of the statute? If the language of the statute does not mean that, then the evidence of the plaintiff did not prove a cause of action under the statute and the defendant's demurrer to the plaintiff's evidence should have been sustained. We find the answer in our own decisions. In *K. P. Rly. Co. v. Wiggins,* 24 Kan. 588, plaintiff's mare was killed by a train being operated by defendant. It occurred in a county where the herd law was in force. The railroad admitted killing the mare and that its right of way was not fenced. It argued that in herd law counties the owners of domestic animals were bound to keep them from trespassing and if they failed to do so were liable for all damages done by them, irrespective of negligence; that the animal was trespassing on railroad property when she was killed and her owner was liable for all the consequences of such trespass. We first recited a substantial statement of the evidence and in dealing with the argument that plaintiff's own evidence convicted him of contributory negligence said:

"Reasonable precaution, and not absolute security, is required. If the latter were the rule, the fact that the animal got loose proves the negligence, and the manner in which she was confined is immaterial."

In dealing with the other question we said:

"Can it be held that this animal was allowed to run at large? It would not seem that plaintiff could be charged with any violation of this statute when he had taken reasonable precautions to confine his animal."

See, also, *Mo. Pac. Rly. Co. v. Johnston,* 35 Kan. 58, 10 Pac. 103; *Mo. Pac. Rly. Co. v. Bradshaw,* 33 Kan. 533, 6 Pac. 917; and *Mo. Pac. Rly. Co. v. Roads,* 33 Kan. 640, 7 Pac. 213.

An instructive discussion of this subject is in *Railway Co. v. Olden,* 72 Kan. 110, 83 Pac. 25. There three mules and a colt were killed by defendant railway company. The defendant argued that since the evidence disclosed the enclosure from which the stock escaped was not fenced with a legal fence the plaintiff was guilty of contributory negligence and could not recover. We pointed out how the fence law, chapter 40, Laws of 1868, modied the common law and that the enactment of the herd law, chapter 193 of the Laws of 1872, was a readoption of the common law. In considering the question of whether the fence law furnished a rule by which to determine whether the owner of stock in herd law counties was guilty of negligence in enclosing them, we said:

"The care and diligence that every man is required to exercise in the protection of himself or property is ordinary care in view of all the surrounding circumstances. If the stock killed be the ordinary farm stock, and the fence, such as is generally required to restrain that kind of stock, and they escape without his fault, he is not guilty of negligence and is not guilty of permitting the stock to run at large, and he may recover regardless of the fence law."

In *Abbey v. Railway Co.*, 108 Kan. 88, 194 Pac. 191, we said:

"Under the night-herd law (Gen. Stat. 1915, §§ 10974-10976), stock is confined when means shown by experience to be adequate for the purpose are employed, and if an escape occur without fault of the owner, the escaping animals are not regarded as running at large." (Syl. ¶ 3.)

These opinions all deal with actions brought against railroads for killing stock. About the only defense available to the railroads in such cases is the contributory negligence of the owner in permitting his stock, which was killed, to run at large. The opinions interpreted the statutes then in existence, however, especially the words "running at large" or "at large."

Another decision of similar import is *Hazelwood v. Mendenhall*, 97 Kan. 635, 156 Pac. 696. At page 637 of the opinion in that case we held:

". . . The requirement that the crops shall be protected by a legal fence is canceled by the herd law only so far as relates to animals that are 'running at large.' Any that without fault of their owner have escaped from an enclosure surrounded by a barrier reasonably adapted to their restraint are not regarded as within that term, . . ."

The rule seems to be universal that the words meant something more than merely being unattended. See 3 C. J. S. 1231, § 131, where the following statement appears:

"The meaning of the words 'running at large' differs in different statutes, and should always be determined largely from the objects and purposes sought to be accomplished by the particular statute wherein they are used. There is a distinction to be noted between a statute attaching a penalty to 'permitting animals to run at large' and one making it the duty of some municipal official to take up an animal 'found running at large.' A statute of the first class implies knowledge, consent, or willingness on the part of the owner that the animal be at large, or such negligent conduct as is equivalent thereto, but does not comprehend a case where, through some untoward circumstance, the owner is unable to watch and care for the animal in a particular instance, or where, notwithstanding the owner has taken precautions to restrain them, and is without fault or negligence, the animals escape from him, and he makes immediate and suitable efforts to recover them, or where the animals have been driven from the lands of their owner by a wrongdoer. The rule is otherwise, of course, if animals are at large through the negligence of the owner, or of his servants, or are permitted to go at large after knowledge of their escape."

This was the rule announced in *Champlin Refining Co. v. Cooper,* 184 Okla. 153, 86 P. 2d 61. That was a case where a plaintiff's automobile had collided with a horse at large and unattended upon the highway. The Oklahoma statute or herd law was somewhat like ours, that is, it used the words "running at large." The trial court held the unlawful presence of the horse upon the highway established a prima facie case of negligence under the statute. The supreme court reversed on several grounds and on the question with which we are dealing held:

"Proof of the presence of a horse upon a public highway, at large and unattended, in violation of the Herd Law, sections 8986-9045, O. S. 1931 (4 Okla. St. Ann., sec. 91-184), which imposes a positive duty upon the owner of preventing such an animal from running at large and unattended and makes said owner liable for all damages done while wrongfully remaining at large upon the public highway or upon the lands of another, is not prima facie evidence of negligence on the part of such owner and will not of itself sustain an action for property damage to a motorist's automobile resulting from a collision with said horse."

See, also, *Gardner v. Black,* 217 N. C. 573, 9 S. E. 2d 10. This was a case where plaintiff's automobile collided with a mule. The statute in question used the phrase "run at large." The court held

"The owner or person having charge of domestic animals is liable for injury or damage caused by such animals while running at large only if the animals are at large with his knowledge and consent or at his will or their escape is due to negligence on his part."

See, also, *Howrigan v. Bakersfield,* 79 Vt. 249, 64 Atl. 1130. There plaintiff sued the township because his blind mare was injured on account of the alleged insufficiency of a bridge the township was bound by law to keep in repair. The township defended on the ground it was contributory negligence in the plaintiff to allow the mare to stray along the highway unattended. The supreme court said:

"It is generally held, under statutes prohibiting horses and cattle going at large, that when they escape from their owner's enclosure without his fault or negligence, they are not at large in the legal sense of the term."

See, also, *Anderson v. Nesbitt,* 43 Ind. App. 703, 88 N. E. 523; also *DeBuck v. Gadde* (1943), 319 Ill. App. 609, 49 N. E. 2d 789.

Applying the above rule to the facts here, we hold that the plaintiff had the burden of proving in order to make a prima facie case, that the horse with which plaintiff collided was unattended upon the highway because its owner had failed to exercise due care in enclosing it, under all the surrounding facts and circumstances. He

made no attempt to do this and thereby failed to prove a cause of action sufficient to warrant the trial court in submitting the issues to the jury.

Plaintiff argues that even in the absence of statute, proof that the mule was unattended upon the highway was sufficient proof of negligence by circumstantial evidence to make out a prima facie case. It is true there are some authorities holding that way. What this argument amounts to is that in such a case the rule of *res ipsa loquitur* applies. To so hold would be to hold that the fact an animal escapes from a pasture or corral or from custody while being led, ridden or driven or while hitched or tied to a hitching rack is so unusual that no other conclusion can be drawn from the occurrence itself than that the owner was negligent. Our knowledge of the ways of domestic animals forbid us doing that. We cannot assume merely because two mules were loose on the highway that the owner was negligent in the manner in which he confined them. See *Stephenson v. Corder*, 71 Kan. 475, 80 Pac. 938. We considered there a case where a team while tied to a hitching rack in a town became frightened, broke a halter strap and while running away on the street collided with a buggy in which the plaintiff was riding, and injured her. The theory upon which plaintiff sued was that the fact the halter strap broke was evidence the owner had negligently left them insecurely fastened. We said:

"It may well be questioned whether under the evidence in this case the fact that it broke draws with it any presumption that the strap was so defective as to make its use under ordinary circumstances negligence. . . . Ordinary care is all that was required of the defendant, and ordinary care does not require that all possible means for avoiding accident should be used. Quite true, the accident would not have occurred had the horses been hitched to an unbreakable rack with an unbreakable chain; nor would it have occurred had not the defendant driven to the city on that day; but ordinary care does not require the use of such precautions."

Other opinions supporting this view as to *res ipsa loquitur* are *Mayes v. Kansas City Power & Light Co.*, 121 Kan. 648, 249 Pac. 599; *Stroud v. Sinclair Refining Co.*, 144 Kan. 74, 58 P. 2d 77; and *Starks Food Markets, Inc. v. El Dorado Refining Co.*, 156 Kan. 577, 134 P. 2d 1102.

It follows the defendant's demurrer to plaintiff's evidence should have been sustained.

The judgment of the trial court is reversed with directions to enter judgment for defendant.

SMITH and THIELE, JJ., dissent.

PRICE, J., concurs in the result.

WERTZ, J., not participating.