No. 42,248

JOHNNIE I. CLARK, *Appellee,* v. BUD CARSON, *Appellant.*

(362 P. 2d 71)

Opinion filed May 13, 1961.

*L. M. Ascough,* of Topeka, and *A. L. Foster,* of Parsons, argued the cause and were on the briefs for appellant.

*Aubrey Neale,* of Coffeyville, argued the cause, and *Ray A. Neale,* of Coffeyville, was with him on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: Except for specifications of error hereafter noted, we are presented with another factual appeal prompted by the de-

fendant's dissatisfaction with the verdict of the jury and the judgment for the plaintiff in the sum of $651.28.

The plaintiff sought to recover damages to his automobile resulting from a collision with a cow. The second amended petition alleged the defendant negligently and unlawfully failed to properly fence the area of his farm where his cattle were confined in that the wire was loose and thereby they were able to go through the fence and run at large in violation of G. S. 1949, 47-122 and 47-123; that at numerous times prior to the collision the defendant permitted his cattle to run at large, and on one occasion he had been notified by a state highway patrolman that his cattle were running at large and constituted a hazard upon the highway, and that the defendant failed to exercise due care to restrain his animals in his enclosure.

In his answer the defendant denied he was negligent, and alleged the collision was caused by the plaintiff's negligence which contributed to and was the proximate cause of the collision, setting out four specific acts of negligence of the plaintiff.

The plaintiff's reply joined the issues, and the case was tried by a jury. At the close of plaintiff's evidence, the defendant demurred, which was overruled. Thereafter the defendant introduced his evidence and at the close of all the evidence he made no motion for a directed verdict. In instructing the jury, the court gave 31 instructions concerning all phases of the law of negligence appropriate to the issues raised by the pleadings and to the facts and circumstances established by the evidence of both parties, including the negligence charged to the defendant in the second amended petition and to the plaintiff in the defendant's answer. The case was submitted to the jury which returned a verdict in favor of the plaintiff, and answered the following special questions:

"1. Was any damage that plaintiff sustained due to any act or omission on the part of defendant, Bud Carson? Answer: Yes.

"2. If you answer Question No. 1 in the affirmative, then state what act Bud Carson did, or what act he failed to do, in restraint of his cow, or maintenance of his fence, that proximately caused the plaintiff's damage. Answer: Failed to maintain adequate fence when he had knowledge of cows in heat.

"3. Do you find that on the day and night of the collision that defendant's cow had been confined in an area enclosed by a legal fence, as defined by the Court's instructions? Answer: Yes.

"4. Was the fence by which the cow was confined on the day and night of the collision in good repair? Answer: Fair.

"5. State the approximate speed of plaintiff's automobile: (a) At the

time he applied his brakes. Answer: 65 to 70 miles per hr. (*b*) At the time of the collision. Answer: 60 miles per hr.

"6. Do you find that plaintiff was driving at a speed greater than was reasonable and prudent under the conditions existing upon the highway at the time and place of the collision? Answer: No.

"7. Do you find that plaintiff, in the operation of his automobile, failed to exercise ordinary care for his safety which contributed to damages sustained by him? Answer: No."

Thereafter the defendant filed a motion to set aside the answers to special questions 1, 2, 6 and 7 upon the ground that they were inconsistent with each other; contradictory to the issues of the case; not supported by the evidence, and left the special questions undetermined and unanswered, and moved for a new trial. The motions were considered and overruled, and the court approved the general verdict and answers to the special questions. Hence this appeal.

A résumé of the evidence follows: Between 10:30 and 11:00 p. m. on September 9, 1956, the plaintiff and his wife were returning to their home in Coffeyville from visiting her parents near Parsons. While driving down the west slope of a hill on U. S. Highway No. 160 between 65 and 70 miles an hour the plaintiff dimmed his lights for an on-coming automobile. Almost immediately he saw the highway was blocked by four or five black and white cows about 60 feet ahead of him. He applied his brakes and swerved to the right and missed the cows in front of him, but collided with the defendant's cow which came up out of the ditch on the north side of the highway. The collision caused the plaintiff's car to go into the ditch; the cow was killed and was found near the defendant's fence north of the highway. The on-coming car stopped, but the driver did not see the cows until he was about twelve feet from them, and they were still on the highway.

The defendant owned 270 acres of land on the north side of the highway where he operated a dairy with about 70 head of Holstein cows, and he leased an additional 130 acres of land. About a quarter of a mile north of the highway he had a dry lot around his silos. The lot was fenced with four wires on cedar posts about eight feet apart. A lane extended from the lot southeasterly about a quarter of a mile to a pond near the highway, which provided the water supply for his cattle. The lane was fenced partly with three wires and partly with four wires, and was in "fairly good shape." The pond was fenced with three and four wires and was approximately 40 feet north of the north edge of the highway.

At two different times prior to the accident a highway patrolman had driven cows off the highway, and on one occasion had notified Mrs. Carson. The defendant was told of the patrolman's visit and he claimed the cows belonged to a neighbor, but he never told the patrolman the cows were not his.

The defendant testified that the morning after the accident he found one of his heifers in a pasture west of his farm; that he examined the fence in an effort to find out where the heifers got out; that the fence was all there, there were no wires down or pulled loose from the posts, no gates were open, and he did not find where the cows got out. He further testified that the only way the heifers could get out was to go over the fence or *through* it; that the fence by the pond was partly three wires and partly four wires; that a three-wire fence was not sufficient to hold heifers in heat if they undertook to jump it; that he did not breed his cows until December, and he surmised the heifers were in heat; that there were cattle across the road, and "that is why I figured that these heifers jumped the fence to get out across the road."

The defendant's brother-in-law, who lived across the highway south of the defendant's farm, testified that the fence along the lane was average and in fairly good shape, and that the three-wire fence around the pond was "just average." In reply to a question whether the fence was loose enough that a heifer could go through it, he stated it was in average condition and that some cows would go through it and others would not.

The defendant first argues that under the law as stated in *Wilson v. Rule,* 169 Kan. 296, 219 P. 2d 690, and *Abbott v. Howard,* 169 Kan. 305, 219 P. 2d 696, the mere fact his cow was loose on the highway and the plaintiff collided with it was not sufficient to convict him of negligence; that in order to make a *prima facie* case the plaintiff was required to prove the cow was loose upon the highway because he failed to exercise due care to keep it confined under all the facts and circumstances; that there was no evidence of any negligence on his part which would justify a jury finding that he failed to exercise reasonable precaution to secure his cows, and that where, as here, ordinary farm animals escape from their enclosure without fault or negligence of the owner they are not regarded as running at large, and contends it was error to give instructions 19 and 21, which we quote:

"19. Another section of the Statutes of this State, applicable in this case, reads as follows: '47-122. That it shall be unlawful for any neat cattle, horses,

mules, asses, swine or sheep, to run at large. 47-123. That any person whose animals shall run at large, in violation of the provisions of section 47-122 of this act, shall be liable to the person injured for all damages resulting therefrom, and the person so damaged shall have a lien on said animals for the amount of such damages.'

"21. As used in the Statute, 'running at large' is the strolling, without restraint or confinement, as wandering, roving and rambling at will without restraint. Suffering or permitting an animal to go at large implies knowledge, consent, or willingness on the part of the owner, or such negligent conduct as is equivalent thereto; but does not comprehend a case where animals escape from their owner, after due precaution to secure them has been taken, and without fault or negligence on his part, and he makes immediate and suitable efforts to recover them."

The contention is not well taken. A simple fact of the case was that the defendant's cow was unattended upon the highway. Under the rule announced in *Wilson v. Rule,* supra, and *Abbott v. Howard,* supra, the defendant was required to use reasonable precaution to confine his cows, but absolute security was not required. In framing its instructions, the court correctly applied that rule, and advised the jury in instruction 23 that if, on the night in question, the defendant confined his cow in an enclosure of such kind and character as would ordinarily be expected to be adequate to confine ordinary farm animals, and she escaped therefrom without his fault, she would not be considered running at large and he would not be liable. The term "running at large" means something more than being merely unattended (*Wilson v. Rule,* supra), and the court correctly advised the jury the meaning of that term in law in instruction 21, carefully pointing out, however, that the term did not include situations where· animals escape from their owner after due precaution to secure them has been taken and without fault or negligence on his part. On the other hand, where the owner of ordinary farm animals fails to use reasonable precaution to confine his animals and they escape, they are not only unattended but they are running at large in violation of G. S. 1949, 47-122. Under the pleadings, the pivotal question was whether the defendant was guilty of negligence in permitting his cow to be upon the highway, and evidence was introduced by both parties upon that issue. The court had a duty to instruct the jury of the defendant's statutory liability in the event it found from the evidence that he failed to exercise reasonable precaution to confine his cow and it escaped upon the highway and caused damage to the plaintiff. The court fully and fairly presented the case to the jury and we perceive no error in the giving of instructions 19 and 21.

The defendant next argues the district court erred in failing to

sustain his motion to set aside answers to special questions 1, 2, 6 and 7, and directs his principal argument to answers to 1 and 2 finding the defendant guilty of negligence in that he "failed to maintain adequate fence when he had knowledge of the cows in heat." Argument in support of the contention is twofold. First, that the court's instruction 20 defined a legal fence (G. S. 1949, 29-105) and since the answers to special questions 3 and 4 found the defendant's cows had been confined in an area enclosed by a legal fence in fair repair, no possible negligence could be attributed to him as a matter of law or fact, and the judgment should be reversed. Second, that there was no evidence to support the answers to the afore-mentioned questions.

We think the defendant misconstrues the effect of the answers to special question 3. The fact that the defendant had a three-wire legal fence does not, of itself, relieve him of negligence in failing to confine his cows. Special finding 4 was that his fence was only fair. The essential question was whether the defendant used reasonable precaution in confining his cows (*Wilson v. Rule*, supra), which was answered in the negative. Assuming, *arguendo*, that his fence met the minimum legal requirements but was of such kind and character as not to be practical to confine his livestock, or if more than a legal fence was required as a reasonable precaution to confine his animals, such a finding would not be inconsistent with the general verdict and would not entitle the defendant to a new trial.

On the second point, the defendant strenuously argues there was no evidence that he was guilty of negligence and contends the plaintiff was guilty of contributory negligence as a matter of law. We are not persuaded. Each party charged the other with negligence which caused the collision. It is unnecessary to re-iterate the evidence. The court correctly stated the law pertaining to the duty of persons driving automobiles upon a highway, and of owners in restraining ordinary farm animals within their enclosure, and properly instructed the jury that if it found the collision to be the result of plaintiff's negligence he could not re-cover, and that if it found the defendant was guilty of negligence in failing to take reasonable precaution to confine his cows he was liable to the plaintiff for damages he sustained. Whether the de-fendant was negligent, or whether the plaintiff was driving at a speed greater than was reasonable and prudent under the cir-cumstances, or whether he failed to exercise ordinary care for his own safety, were all questions of fact upon which the minds of

reasonable men might differ and this court cannot say the evidence, together with all logical and reasonable inferences to be drawn therefrom, was insufficient to warrant the jury in finding the defendant guilty of negligence, or to say as a matter of law that the plaintiff was guilty of contributory negligence barring his recovery.

The defendant next contends judgment should be entered for him upon the jury's answers to all the special questions, and cites and relies upon *Ziegelasch v. Durr*, 183 Kan. 233, 326 P. 2d 295. The point is not well taken. It is unnecessary to analyze that decision or discuss its inapplicability to the instant case except to say that there a judgment for the plaintiff was reversed for the reason that the special findings clearly established the plaintiff's negligence which continued up to the time of the accident. In the instant case, the special findings established the defendant's negligence and freed the plaintiff of contributory negligence, and they were supported by substantial evidence. Likewise, they were not inconsistent with nor contrary to each other, and all supported the general verdict for the plaintiff.

The defendant further argues the district court erred in overruling his demurrer to the plaintiff's evidence and in refusing to give requested instructions 1 and 4. Each point has been carefully considered and neither requires an extended discussion. When the defendant failed to move for a directed verdict at the close of all the evidence he waived his right to contend the plaintiff's evidence was not sufficient to warrant its submission to the jury (*Morris v. Musick*, No. 41,978, 188 Kan. 197, 362 P. 2d 68, this day decided, and cases cited therein).

Requested instruction 1 dealt with the defendant's liability for injury or damage caused by his animals while running at large. That subject was fully covered by the court's instruction 23. Requested instruction 4 dealt with an "unavoidable accident," and under the evidence presented the court properly denied the request. In the recent case of *Paph v. Tri-State Hotel Co.*, 188 Kan. 76, 360 P. 2d 1055, many of our decisions on this point were reviewed and the reader is referred to that opinion for a full discussion of the subject.

All points raised by the defendant have been carefully considered and no reversible error was committed. The judgment of the district court is affirmed.

It is so ordered.