Gary Joe LANER, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A-13251.

Court of Criminal Appeals of Oklahoma.

May 8, 1963.

Earl M. Knight, Spavinaw, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JOHNSON, Judge.

The testimony in this case shows that on December 24, 1961, Walker Jones took his eleven dogs, all Bi-Water Virginia Wolf hounds, to the E. T. Cook farm for a hunt. He released them on the Fred Workman property and they picked up a wolf trail and started running east towards the lake. After following the hounds for some time, Mr. Jones came to the Semore place about dark, and there found Mr. Semore holding one of his dogs that had been shot. This was on a country road and later testimony established this as the site of the shooting. Mr. Jones recovered eight of his hounds that night. One other hound that had been wounded returned later, but he died, as did the dog that Mr. Semore had found, and the eleventh hound was never found.

Further testimony established the fact that on this evening one Gayle Collins saw this same pack of dogs running a big roan deer, down near the lake, and that he stopped by the defendant's housetrailer on his way home and advised Gary Joe Laner of what he had seen.

The defendant testified that he then got his gun and drove in his pick-up to the place on the country road near the Semore place. Here he saw the big roan deer cross the road, followed at a distance of thirty yards by the pack of dogs. He said that he yelled at the dogs and tried to wave them off, but to no avail. He shot three times, hitting three dogs. He then got into his pick-up and returned to his home.

When Gary Joe Laner was first questioned about this shooting that night, he denied any knowledge of the act. However, later he admitted that he had shot the three hounds.

Later a complaint was filed against him in the justice of the peace court, charging him with the crime of grand larceny. A preliminary hearing was conducted and from the evidence received the examining magistrate bound the accused over for the crime of cruelty to animals, and an information charging the defendant with the crime of cruelty to animals was filed in the district court. He was arraigned and entered a plea of not guilty. Prior to announcing ready for trial the defense counsel urged a demurrer and plead to the jurisdiction of the court. Trial by jury was waived and the case was heard by the court. The defendant was found guilty as charged and sentenced to pay a fine of $250 and the costs.

From this judgment and sentence the defendant has appealed.

The defense sets out these arguments in his brief:

(1) He cites 4 O.S.1961 § 41, which says: "It shall be lawful for any person to kill any dog found chasing or worrying sheep, other livestock or poultry, off the premises of the owner of such dogs."

We must take this to mean that the defense classifies this "big roan deer" as "other livestock".

The word "livestock" as defined by Webster's New International Dictionary means "domestic animals used or raised on the farm, especially those kept for profit." In Vol. 25A Words & Phrases "Live Stock", p. 45 it states: "The word 'livestock' is used to denote those kinds of domestic animals and fowls which are normally susceptible of confinement within boundaries without seriously impairing their utility and the intru-

sion of which upon the land of others normally causes harm to land or to crops thereon."

■ Under these definitions, this Court is unable to conceive of a deer being classified as livestock, since it was shown by testimony that this deer belonged to no one, that it roamed at large throughout this area and in the generic sense is not a domestic animal. The defense's first contention or argument has no merit.

(2) The right to abate a public or private nuisance under Title 50 O.S.1961 § 1 defines a nuisance, and since counsel refers only to the first two parts of this statute, which are:

"A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:

"First. Annoys, injures or endangers the comfort, repose, health or safety of others; or,

"Second. Offends decency; or * * *"

we shall only consider them.

Counsel further makes mention of the section of this title that deals with abatement, sections 12 and 14, and contends that the defendant had a right to destroy these dogs because they were either a public or private nuisance.

■ We cannot see that the public was annoyed, injured or damaged in any way by the running of these dogs. Their owner had permission to use the lands and there is no evidence that this community, as a whole, was disturbed by their actions. This being so, then there was no public nuisance. If it were not a public nuisance, then in fact it must have been a private nuisance, or one that annoyed, injured or endangered Gary Joe Laner.

■ This Court fails to understand how a pack of dogs that were not on Mr. Laner's land, were not annoying, injuring or endangering Mr. Laner's property, comfort, repose, health or safety, but were running on land owned by another and across country roads, could possibly be called a private nuisance.

■ And finally, the question of offending the decency of others. Here again we fail to see how the ancient sport of running the hounds or wolf hunting in any way can offend public decency.

Since the running of the hounds did not constitute a public or private nuisance, we feel that it is unnecessary to discuss the matter of abatement. However, in passing we must state that if the defendant felt there was a nuisance, he could have used less drastic measures to abate the same.

■ (3) The statute pertaining to the crime does not cover the dogs that were killed, because they were not "in subjugation or captivity". However, defendant fails to quote the complete statute, a part of which states: "* * * wilfully set on foot, instigate, engage in, or in any way furthers any act of cruelty to *any animal,* or any act tending to produce such cruelty * * *." Therefore, this statute cannot be said to be too uncertain to cause the crime charged to the defendant.

■ (4) The final allegation of the defendant that there was an inherent right to kill these dogs because of eminent danger to the deer cannot be sustained. Counsel cites Mossman v. Bostridge, 76 Vt. 409, 57 A. 995, which case states: "[A]ny dog, without regard to his breed, or whether permitted to run at large, may be killed while it is hunting deer."

However, the Vermont courts in Villa v. Thayer, 92 Vt. 81, 101 A. 1009, L.R.A.1918 A, 837, states: "[1] At one time our statutes permitted any person to kill any dog found hunting a deer. Acts 1898, No. 108, § 3; Mossman v. Bostridge, 76 Vt. 409, 57 Atl. 995. But this provision of the law was soon repealed, and has never been restored. Acts 1904, No. 130; P.S. 5325; Acts 1912, No. 201, §§ 13, 17. * * *"

■ There is no law in Oklahoma that gives a person the right to shoot a dog for chasing deer, and until such a law is enacted, we must consider the action taken by the defendant to be in violation of 21 O.S.1961 § 1685.

 This Court certainly does not condone the killing of deer by packs of dogs that are left to run wild by their owners. However, in the instant case we do not feel that this was true. These were trained wolf hounds that were running a wolf trail and the defendant admitted shooting them and then driving off. He did not even take the time to see if they had been killed outright. He knew that he had hit the dogs and he was willing to let them drag themselves off and suffer and die. The trial court felt that this was cruelty to animals, and we can but agree.

The judgment and sentence is affirmed.

BUSSEY, P. J., and NIX, J., concur.