The Honorable Don Rezac State Representative, 61st District 12350 Ranch Road Emmett, Kansas 66422
Dear Representative Rezac:
You ask our opinion concerning whether peacocks fall within K.S.A. 47-122
which prohibits domestic animals from running at large, or within K.S.A.47-122a which prohibits livestock from running at large. If peacocks are within either prohibition, you inquire about the owner's penalty for noncompliance.
We begin with K.S.A. 47-122 which provides:
 "It shall be unlawful for any domestic animal, other than dogs and cats, to run at large." (Emphasis added)
Since neither the statute nor Kansas case law address the meaning of the term "domestic animal" we turn to general legal principles for guidance:
 "The words `domestic animals' and `any domesticated animal' are not technical words which have acquired a peculiar and appropriate meaning in law, and therefore are to be construed according to the common and approved usage of the language. In ordinary speech, sanctioned as well by the dictionaries, the word `domestic' means belonging to the home or household, and the word `domesticated' means made domestic or converted to domestic use. Where descriptive of the word `animals,' these terms in general usage carry the meaning of `tamed,' `associated with family life,' or `accustomed to live in or near the habitations of men.'
. . . .
 "Generally, the present day classification of animals, and one which has been recognized from the earliest date of recorded history, is twofold: wild or ferae naturae, and domestic or domitae naturae. Animals ferae naturae are such as are of a wild nature or disposition and so require to be reclaimed and made tame by art, industry, or education, or else must be kept in confinement to be brought within the immediate power of the owner. Animals domitae naturae, on the other hand, are those which are naturally tame and gentle or which, by long continued association with man, have become thoroughly domesticated and are now reduced to such a state of subjection to his will that they no longer possess the disposition or inclination to escape. The class of domestic animals includes cattle, horses, sheep, goats, pigs, poultry, cats, and all other animals which by habit or training live in association with man." 4 Am.Jur.2d Animals, sec. 1, 2 (1962)
As used in the Restatement of Torts, a domestic animal is an animal which is by custom devoted to the service of mankind at the time and in the place in which it is kept; a wild animal is one which is not so devoted. Restatement (Second) of Torts Sec. 506.
Additional guidance is provided by 3A C.J.S. Animals, sec. 3 (1973);
 "Domestic animals include those which are tame by nature, or from time immemorial have been accustomed to the association of man, or by his industry have been subject to his will, and have no disposition to escape his dominion. The words `domestic animals' are held to constitute a generic term which may have varied application in different parts of the world.
Wild animals comprehend those wild by nature, which, because of habit, mode of life or natural instinct, are incapable of being completely domesticated, and require the exercise of art, force, or skill to keep them in subjection."
Examples given of domestic animals include cats, dogs, domestic turkeys, horses, oxen and cattle. Examples of wild animals are bees, doves, feral hogs, mink, monkeys, otters and rats. We can find no case in this country which classifies, or even mentions, peacocks as either domestic or wild. It appears that one must know something about the nature of peacocks and their relationship with man in order to determine whether to consider these birds ferae naturae or domitae naturae. For that we must look outside standard legal authorities.
From the Encyclopedia Americana International Edition, Vol. 21 (1993) we learn the following: "Peacock" refers to any of several species of large pheasants, the male of which often has a long train of feathers. The name peacock is sometimes limited to males; the species is then called peafowl and the female a peahen. In addition:
 "The blue peafowl (Pavo cristatus), native to India and Sri Lanka, has been introduced or reared worldwide. Less common is the green peafowl (P. muticus) of southeastern Asia and nearby islands. . . .
During display, male blue and green peacocks lift their showy long trains vertically and spread them into a shape resembling a fully opened fan. Peacocks of both species have loud, raucous calls. They inhabit forests but often visit clearings or riverbanks. Peacocks fly up to roost in trees at night but nest on the ground.
For more than 2,000 years the Indian blue peacock has been kept in captivity. The green peacocks, much less frequent in captivity, are often hostile to other penned birds and can even be dangerous for children. Due to hunting and the destruction of forests, the green peacock has become threatened with extinction in its naive lands, but some 500 birds are in captivity." p. 572-573.
From Sigmund Lavine's Wonders of Peacocks (1979), we learn that peacocks are extremely sedentary birds.
 "They have earned this distinction because they rarely move far from an area where food is abundant, water plentiful, and a suitable roost available. However, if the birds are disturbed, they will desert their usual haunts for several days. The only other time they travel any distance is when drought dries up their drinking places or at the start of the breeding season when the males take their harems into the jungle, mate, and raise their families." p. 39
In addition:
 "In those parts of India where peacocks are highly regarded, the birds are not so alert to possible peril. Eventually they become semi-tame and, as they lose their fear of man, depend upon cultivated crops for food and spend most of the day in garden plots.
 "Truly wild peacocks always feed in the open so that they can more easily detect an intruder or other threat to their safety and make their escape." p. 42.
Mr. Levine also teaches us that peacocks have been raised in captivity for more than four thousand years for their ornamental value, their iridescent feathers used in Russian headdress, ceremoniously awarded to Chinese nobles for faithful service to the emperor and valued by fashion-conscious women throughout the centuries. Additionally the Romans believed the peacock to be the favorite of Juno, queen of the gods, and considered peafowl roasted in their feathers a great delicacy, especially peacock tongues. "Christianity," according to Mr. Levine, "has also made use of the peacock."
 "Because it was once widely believed that peacock flesh did not decay, early Christians employed the bird as the symbol of immortality. They also used the `eyes' in the train to represent the `all-seeing eye' of God. Considered an emblem of the Supreme Being, peacocks were embroidered on ecclesiastical garments. The peacocks frequently found on the walls of ancient Christian catacombs personify the souls of the faithful drinking from the Fountain of Life." p. 23-24.
In modern times, although no longer the prized treasure of kings who spent vast sums on the upkeep of flocks of these birds, peacocks still grace the greenways of public parks, private estates and lesser castles of Kansas homeowners, especially in non-urban areas. It is these Kansas peacocks which return us to your question.
It appears to us that peacocks may be either wild or domestic depending upon circumstances. They remain wild in their native habitats of origin in India, Sri Lanka and southeast Asia. Kansas peacocks, not being native to this state, must have either been imported or raised in captivity. We assume, without deciding, that the peacocks in question are accustomed to living near mankind, are dependant upon their human owners for food and water, have a suitable roost available, and consequently show no disposition or inclination to escape captivity. If these assumptions are correct, the peacocks would properly be considered domestic animals, and therefore would not be able to run at large.
Your next question pertains to whether peacocks may be considered livestock for purposes of K.S.A. 47-122a which provides:
 "(a) Whenever the owner or the owner's authorized agent allows any livestock to run at large, in violation of K.S.A. 47-122 and such livestock remains on the property of another person, the sheriff of the county in which such livestock are running at large, at the request of such person upon whose property the livestock are running at large, may take such livestock into custody and retain them in a secure holding area." (Emphasis added)
K.S.A. 47-122a further provides procedures for notice to the owner and opportunity for the owner to claim the livestock, subsection (b); sale of the livestock at a public livestock market upon the owner's failure to make a claim, subsection (c); and payment of costs for taking up, keeping and feeding of such livestock, subsection (d).
As with "domestic animal," the term "livestock" is not defined in the statute in issue. While the terms "domestic animal" and "livestock" are sometimes used interchangeably, [K.S.A. 1992 Supp. 47-620; Meader v.Unemployment Compensation Division of Industrial Accident Board,136 P.2d 984 (Idaho 1943)], generally "livestock" means domestic animals used or raised on a farm, especially those kept for profit. Laner V.State, 381 P.2d 905 (Okla. 1963). In other words, livestock is a subcategory of domestic animals.
Attorney General Opinion No. 90-68 presented a detailed recitation of numerous Kansas statutes and administrative regulations defining "livestock" for various purposes in order to determine whether greyhound dogs might be considered livestock. Rather than duplicate the recitation, a copy of that opinion is included; and rather than duplicate the analysis which concluded that greyhounds are not livestock, suffice it to say that in our opinion neither are peacocks. This conclusion is bolsterd by the fact that we seriously doubt public peacock-livestock markets exist in the state of Kansas — thus preventing subsection (c) of K.S.A. 47-122a from being implemented.
Assuming peacocks are domestic animals, your last question relates to the penalty for noncompliance with K.S.A. 47-122, i.e. the consequences for allowing one's peacocks to run at large. K.S.A. 47-123 speaks specifically to the consequences to an owner whose livestock runs at large in violation of K.S.A. 47-122: liability to the person injured for all damages resulting therefrom, secured by a lien on the livestock for the amount of damages. (We note that the statute provides for civil liability and not for a criminal penalty.) While K.S.A. 47-123 does not address liability for damages resulting from the activities of non-livestock domestic animals (such as peacocks) running at large, in our opinion common law principles would necessitate the same result: liability to the person injured for all damages resulting therefrom.
We caution injured parties who may contemplate a lawsuit for damages premised on K.S.A. 47-122 or common law principles to become familiar withWalborn v. Stockman, 10 Kan. App. 2d 597 (1985) which reiterated the definition of "to run at large" as found in earlier Kansas cases:
 "As used in the Statute, `running at large' is the strolling, without restraint or confinement, as wandering, roving and rambling at will without restraint. Suffering or permitting an animal to go at large impies knowledge, consent, or willingness on the part of the owner, or such negligent conduct as is equivalent thereto; but does not comprehend a case where animals escape from their owner, after due precaution to secure them has been taken, and without fault or negligence on his part, and he makes immediate and suitable efforts to recover them." Cooper v. Eberly, 211 Kan. 657, 668 (1973) and Clark v. Carson, 188 Kan. 261, 265 (1961).
In conclusion, it appears that peacocks may be considered domestic animals for purposes of K.S.A. 47-122, but are not considered livestock for purposes of K.S.A. 47-122a. An owner who allows his peacocks to run at large may be liable for damages resulting therefrom.
Very truly yours.
 ROBERT T. STEPHAN Attorney General of Kansas
 Camille Nohe Assistant Attorney General
RTS:JLM:CN:bas