Jan Satterfield Butler County Attorney 214 W. Central El Dorado, Kansas 67042
Dear Ms. Satterfield:
As Butler County Attorney you ask our opinion regarding whether K.S.A.47-122 is a criminal or a civil statute. That statute provides:
 "It shall be unlawful for any domestic animal, other than dogs and cats, to run at large."
While the word "unlawful" is used within this statute, based on legislative history and principles of criminal law, in our opinion K.S.A. 47-122 is a civil liability statute.
 Legislative History
The history and progression of Kansas fence and herd laws was presented in a law journal article from which we quote:
 "Kansas has had a long and varied history in the area of fence laws. The earliest statement of the law in Kansas regarding fences was the common law:
 "`At common law, owners and keepers of livestock were under the duty to restrain their animals from trespassing on real property. Persons were held strictly liable for the acts of their trespassing livestock.'
 "Under the common law, if livestock got out and damaged another person's property, the stock owner was liable for the damages regardless of his attempts to restrain the livestock or the condition of his fences. Strict liability was the rule. An owner had to keep his livestock off the land of another or suffer the consequences.
 "In 1855, the first edition of the Statutes of Kansas Territory contained `an act regulating enclosures.' This law made no reference to the common law, but merely stated that all fields and enclosures must be fenced and specified how a lawful fence had to be constructed. This law, referred to as the Kansas Fence Law, adopted what has been called a fence-out-policy, because it required the landowner to construct a lawful fence around his property before he could collect damages from the owner of wayward livestock. Thus, the landowner had to fence out all other livestock. If the landowner did not have a legal fence around his land, he could not recover for damages
caused by another's livestock.
 "The fence-out policy made sense in 1855; Kansas was an open range state and economics dictated that it would be far more practical and less expensive to fence in small fields of growing crops than to attempt to fence in large herds on the wide open prairie.
 "Under the old Kansas fence law, if livestock did trespass within a lawful enclosure, the stock owner was strictly liable for the damages caused by his livestock. The simple fact that the livestock had trespassed within a lawful enclosure was enough to impose liability on the cattleman. This portion of the Kansas fence law survives even today.
 "Kansas wasn't to stay an open range state forever. In 1929 the Kansas Legislature passed a statute providing:
 "`That it should be unlawful for any neat cattle, horses, mules, asses, swine or sheep, to run at large.'
 "(Neat cattle does not refer to cattle that dress nicely, but rather to domesticated straight-backed animals of the bovine genus.)
 "This law was passed in 1929 and its accompanying statutes were collectively referred to as the Kansas Herd Law. The legislature at that time further enacted sanctions against any owner allowing his animals to run at large. They stated that any livestock owner allowing his animals to run at large `shall be liable
to the person injured for all damages resulting therefrom, and the person so damaged shall have a lien on said livestock for the amount of such damages.'
 "Thus, in 1929, the Kansas fence law battle swung in favor of the farmer and against the rancher. No longer could a stock owner allow his animals to roam at large with impunity. Until 1986 the common law, Fence Laws and the Herd Laws were all still active statutes that affected the area of fences and trespassing livestock. This created a situation in which it was difficult to predict with any degree of certainty when a livestock owner would be held responsible for damages caused by his livestock. However, the 1986 session of the Kansas Legislature rectified this problem of overlapping and inconsistent fence laws. In Senate Bill #403, the legislature clearly established the Kansas Herd Laws as the law of the land. This means that domestic animals cannot run at large in the state and that they have to be enclosed by a lawful fence. The legislature also made clear that the livestock owner has to be negligent before he can be held responsible for the damages caused by his trespassing animals."[1]
As this law journal article and numerous cases which reached the Kansas appellate courts[2] make clear, the Kansas herd law has always been considered a civil liability statute and not a criminal prohibition statute. Since 1929, when the first version of K.S.A. 47-122 was enacted,[3] it has been accompanied by a damages provision:
 "Any owner whose livestock shall run at large, in violation of K.S.A. 47-122, shall be liable to the person injured for all damages resulting therefrom, and the person so damaged shall have a lien on said livestock for the amount of such damages."[4]
Thus, based on the legislative history, in our opinion K.S.A. 47-122 is a civil liability statute.
 Principles of Criminal Law
The fundamental principles regarding whether an act is considered a crime under Kansas law are expressed in two provisions of the Kansas Criminal Code:
 "No conduct constitutes a crime against the state of Kansas unless it is made criminal in this code or in another statute of this state. . . ."[5]
 "A crime is an act or omission defined by law and for which, upon conviction, a sentence of death, imprisonment or fine, or both imprisonment and fine is authorized; . . ."[6]
As seen, while K.S.A. 47-122 makes it "unlawful" for certain animals to run at large, neither a sentence of death, imprisonment or fine is authorized for violation of the defined conduct. Thus, under principles of criminal law, in our opinion K.S.A. 47-122 is not a criminal prohibition statute.
In conclusion, while the word "unlawful" is used within K.S.A. 47-122, based on legislative history and principles of criminal law, in our opinion this statue is a civil liability statute and not a criminal prohibition statute.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Camille Nohe Assistant Attorney General
CJS:JLM:CN:jm
[1] 56 K.J.B.A. No. 3, 15 (1987), Brownback, Kansas Fence Laws andTrespassing Livestock (emphasis added, citations omitted).
[2] Abbott v. Howard, 169 Kan. 305 (1950); Wilson v. Rule, 169 Kan. 296
(1950); Clark v. Carson, 188 Kan. 261 (1961); Cooper v. Eberly,211 Kan. 657 (1973); Lindsay v. Cobb, 6 Kan. App. 2d 171 (1981); Harmonv. Koch, 24 Kan. App. 2d 149 (1997).
[3] L. 1929, Ch. 211, § 1.
[4] K.S.A. 47-123 (initially L. 1929, Ch. 211, § 2).
[5] K.S.A. 21-3102(1).
[6] K.S.A. 2000 Supp. 21-3105.